IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PATRICIA A. GARRETT,** * | |
| * | |
| **Plaintiff,** * | |
| * | |
| vs. * | **Civil Action No. 05-00480-WS-B** |
| * | |
| **JO ANNE B. BARNHART,** * | |
| **Commissioner of Social Security,** * | |
| * | |
| **Defendant.** * | |

**REPORT AND RECOMMENDATION**

Plaintiff Patricia A. Garrett ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 et seq. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was held on July 14, 2006. Upon consideration of the administrative record and memoranda of the parties, it the recommendation of the undersigned that the decision of the Commissioner be **AFFIRMED.**

**I.   Procedural History**

On February 25, 2003, Plaintiff protectively filed an application for supplemental security income benefits alleging that she has been disabled since October 13, 2002 due to lumbar strain, a herniated disc and a pinched nerve. (Tr. 15, 30, 65-70, 74-75, 84). Plaintiff's claim was denied on initial consideration and thereafter, Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Id. at 30-44). On November 21, 2003, an administrative hearing was commenced; however, it was rescheduled to provide Plaintiff an opportunity to secure counsel. (Id. at 259-268). On May 10, 2004, a second administrative hearing was held before ALJ

Glay E. Maggard ("ALJ Maggard"). (Id. at 234-258). Plaintiff, her representative and a vocational expert were in attendance. (Id.) In a decision dated January 21, 2005, ALJ Maggard denied Plaintiff's claim and determined that she is not disabled because she retains the residual functional capacity ("RFC") for medium work[1] and can perform her light[2] past relevant work ("PRW") as a housekeeper and sales associate. (Id. at 13-25). Plaintiff sought review before the Appeals Council ("AC"), which denied her request, thereby making the ALJ's decision final. (Tr. 5-7, 9). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Background Facts

Plaintiff was born on July 20, 1953, and was fifty (50) years old at the time of the administrative hearing. (Tr. 59, 65, 140). Plaintiff has an 8th grade education and PRW as a sales associate and hotel housekeeper. (Id. at 74, 85, 90, 110-117, 139-140, 253, 262). Regarding her impairments, Plaintiff testified that she quit working in November 2002 due to a back injury she received at work, and that while she has applied for other work since, she has been unable to "do anything" due to lower back and left leg pain. (Id. at 239-240). Plaintiff testified that her pain level is "pretty bad" and that walking any distance at all gives her a lot of problems. (Id. at 249). Plaintiff testified that due her pain, she can only walk 40-50 yards, stay on her feet for about 15 minutes, and lift/carry about 5 pounds (but adds that her hands and fingers get numb). (Id. at 244-245). Plaintiff

---

[1] Medium work involves lifting no more than 50 pounds at one time and frequent lifting/carrying of objects weighing up to 25 pounds; if an individual can perform medium work, she can also perform sedentary or light work. 20 C.F.R. § 416.967(c).

[2] Light work involves lifting no more than 20 pounds at one time and frequent lifting/carrying of objects weighing up to 10 pounds; even though the weight lifted may be very little, a job in this category requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 416.967(b).

testified that she is limited with regard to these activities because her back "hurts real bad." (Id. at 245). Plaintiff further testified that because of her pain, she spends her days sitting, standing or laying down "a little while," and is "[j]ust totally miserable." (Tr. 245). Plaintiff reported that she does not do any housework, drive, grocery shop or wash her hair, and that in addition to her pain, she suffers from hypertension (high blood pressure) and depression, which are controlled with medication without side effects. (Id. at 243-244, 246, 250-251). Plaintiff testified that she also has swelling in her feet, legs and hands. (Id. at 244).

**III.   Issues on Appeal**

A.   Whether the ALJ erred by assigning controlling weight to the opinion of a consulting State Agency physician?

**IV.   Analysis**

    **A.   Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. This Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence, and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[3] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable

---

[3]This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[4] See, e.g., Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

In the case sub judice, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability and has the severe impairments of lumbar

---

[4]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

degenerative disc disease and lumbar pain. (Tr. 13-24). The ALJ found that Plaintiff does not have an impairment listed in or medically equal to one in the Listings. (Id.) The ALJ considered Plaintiff's subjective complaints, finding them to lack corroboration or substantiation in the medical evidence such that they are not credible as to a disabling impairment, and determined that she retains the RFC to perform medium work such that she can perform her PRW as a housekeeper (hotel) and sales associate. (Id.) The ALJ thus concluded that Plaintiff is not disabled. (Id.)

The undersigned's review of the relevant evidence of record reveals that from December 2000-December 2002, Plaintiff was treated at the Mobile County Health Department ("MCHD") for complaints of back pain, herniated disc, pinching and paraspinal muscle spasms related to a back injury. (Id. at 177-188). Plaintiff was taking Soma, HCTZ and Zyrtec and was prescribed Flexeril, Darvocet, Lozol and HCTZ. (Id.) Plaintiff was also treated for controlled hypertension and joint pain. (Tr. 177-188). MCHD noted that she had pedal edema when standing for long periods of time. (Id.)

Plaintiff was treated by John A. Hamilton, M.D. ("Dr. Hamilton"), a gynecologist, from October 14, 2002-December 16, 2002. (Id. at 146-176, 197). At her initial October 2002 exam, Plaintiff complained of back pain after lifting a desk at work, but denied any numbness, tingling or radiation of pain to her extremities. (Id.) Her exam showed negative straight leg raising tests, 2+ reflexes, no weakness, normal sensation, mild paraspinal muscle spasms and the ability to toe and heel walk. (Id. at 176). She was diagnosed with lumbar-spinal strain, prescribed medication and placed on "light duty" for 2-3 days. (Id.) Over the course of her next visits, Plaintiff continued to complain of back pain, was diagnosed with L-spine strain, given medication and placed on light duty or restricted from work for a couple of days. (Tr. 146-175).

Dr. Hamilton's November 2002 notes reflect that a MRI showed a small posterolateral left-sided disc protrusion at L5-S1 with no spinal stenosis. (Id. at 160-161). The radiologist noted that the nerve root "may be slightly compressed." (Id. at 160). An examination showed no weakness and Plaintiff was able to toe/heel walk. (Id. at 158). She was diagnosed with L-spine strain with herniated disc and pinched nerve, was found to be unable to work/disabled for 1 week and was restricted from any excessive standing/walking. (Id. at 159). Plaintiff was referred for an epidural cortisone shot. (Id.)

By late November 2002, Plaintiff reported that she was doing "a little better" and her pain was "easing up with rest at home." (Tr. 155). Straight leg raising tests were negative. (Id.) Dr. Hamilton instructed her to continue with light duty work and noted that an epidural injection was not necessary. (Id.) In December 2002, Plaintiff complained of back pain, leg numbness/tingling and side effects from her medication. (Id. at 149-151). She was diagnosed with L-Spine strain, was found to be unable to work/disabled for 1 week, and was referred to an orthopedist. (Id. at 150).

On December 19, 2002, Plaintiff was seen by Tim S. Revels, M.D. ("Dr. Revels"), an orthopedist, for an evaluation of her chronic back pain. (Id. at 193-194). Plaintiff reporting having worsening symptoms, except when she lies down, and that she had missed a significant amount of work since her 2002 back injury due to pain. (Tr. 193-194). Dr. Revels found as follows: she had no acute distress; she could stand in erect posture as well as force flex hands to about distal thigh level only with complaints of severe back pain as a limiting subjective factor; upon light palpation of spine she had significant Waddell[5] characteristics upon testing with "severe complaints above and

---

[5]Waddell signs are responses to physical testing which indicate a psychological basis for an individual's pain; they have been used to detect malingering in patients with back pain. See, e.g., www.ncbi.nlm.nih.gov and www.answers.com (last visited July 17, 2006).

6

beyond expected findings[;]" no severe spasms were appreciable; no angular deformity was palpable; negative straight leg raise bilateral; negative bilateral down going toes; she had no signs of ataxia; and that her MRI findings showed only mild lumbar degenerative disc disease and pre-existing degenerative characteristics, but no stenosis. (Id.) Dr. Revels diagnosed her with lumbar sprain/strain and recommended that she continue on her medications. (Id. at 194). Dr. Revels noted that if Plaintiff did not improve in the next couple of weeks, a FCE would be considered. (Id.)

On December 27, 2002, Dr. Revels treated Plaintiff for complaints of progressive back pain which she reported was made worse with prolonged standing and walking. (Id. at 191-192). He reviewed Plaintiff's MRI findings again, and found that she had no neurological deficits, did not need to be treated with surgery and was not a surgical candidate. (Id. at 191). Dr. Revels recommended a FCE and diagnosed her with lumbar sprain/strain and low back pain. (Tr. 191).

On January 24, 2003, David Dimmick, M.Ed. ("Dr. Dimmick") conducted an FCE on Plaintiff, and found that she demonstrated the ability to lift at the full light and partial medium physical demand level; he noted, however, that "[s]econdary to less than maximum effort demonstrated during static grip testing, symptom magnification characteristics, self limiting behavior and demonstrated inconsistencies, this patient's actual capabilities are uncertain and recommendations are difficult to make." (Id. at 189, 202-215).

On February 14, 2003, Plaintiff was again seen by Dr. Revels, at which time he found that her FCE showed signs of symptoms magnification, less than full effort, self limiting behaviors (that she did not put forth her full maximum effort), multiple inconsistencies, and a score of 5/5 on Waddell testing. (Id. at 190, 201). He opined that Plaintiff has no restrictions on her ability to perform full duties and that she has a 0% partial impairment disability rating from her lumbar

sprain/strain. (Id.)

On April 17, 2003, Plaintiff was admitted to the USA Knollwood Hospital emergency room (reasons unknown) and given Ultracet, Flexeril and Anaprox. (Id. at 195-195A). On November 18, 2003, Plaintiff presented to the MCHD complaining of back pain, hand swelling, frequent crying spells, and an inability to carry objects or continue sewing due to numbness. (Id. at 198-199). Her exam was unremarkable, except for some tenderness and hand swelling. (Tr. 198-199). Plaintiff was diagnosed with hypertension, depression and low back pain for which she was prescribed Soma, Celebrex, Darvocet, Toradol, Zyrtec and Norvasc. (Id. at 199).

On January 28, 2004, Plaintiff was seen by Ruben Belen ("Dr. Belen") at MCHD for complaints of back pain aggravated by movement. (Id. at 220-221). His treatment records reflect that Plaintiff walked with a cane; however, her physical exam was unremarkable except for some tingling and left foot numbness. (Id.) She was diagnosed with hypertension, depression and chronic low back pain/lumbar disc disease, and was prescribed Celebrex. (Id. at 221). On February 20, 2004, Plaintiff's exam at MCHD for complaints of back pain aggravated by movement was within normal limits (except for paraspinal muscle spasms); however, she was still walking with a cane. (Id. at 218-219). Dr. Belen also completed a physical capacities evaluation ("PCE") on Plaintiff on this date, in which he found that she could sit/stand/walk for 1 hour at a time and for 2 hours during an 8 hour work day; occasionally lift/carry up to 20 pounds, frequently lift/carry up to 10 pounds and continuously lift/carry up to 5 pounds; could not engage in repetitive action with either foot but could engage in simple grasping, pushing/pulling arm controls and fine manipulation with her hands; could occasional reach but could not at all bend/squat/crawl/climb; and had a mild restriction from exposure to marked changes in temperature/humidity, moderate restrictions from activities around

unprotected heights, being around moving machinery and exposure to dust/fumes and gases, and a total restriction from driving automotive equipment. (Tr. 216).

On May 20, 2004, Dr. Belen of MCHD noted that Plaintiff's musculoskeletal system and extremities were within normal limits even though she continued to complain of back pain and walked with a cane; he referred her to an orthopedist. (Id. at 229-230).

On June 2, 2004, Plaintiff underwent a physical evaluation by orthopedist B.P. Petersen, M.D. ("Dr. Petersen"), who reviewed the November 2002 MRI report, examined her for lower back pain, and noted that she had prominent tension signs in the left lower extremity and weakness of the calf muscles. (Id. at 231). He also noted that Plaintiff was walking with a cane which she reported was for support due to "weakness" in the left lower extremity with pain symptoms at a 9/10. (Id.) Dr. Petersen diagnosed Plaintiff with "L5-S1 hnp with left lower extremity radiculopathy." (Id.)

On June 28, 2004, orthopedist Andre J. Fontana, M.D. ("Dr. Fontana") conducted an orthopedic evaluation of Plaintiff at the request of the State Agency. (Id. at 224-225). Dr. Fontana's physical examination of Plaintiff revealed that her deep tendon reflexes were 2+; sensory functioning was intact; motor/grip strength was normal at 5/5; cervical spine flexion 60, extension 20; range of motion of cervical spine rotation 45 left and right, 20 of flexion left and right; left shoulder forward flexion 160, abduction 110, external rotation to 30, internal rotation to 100 and extension to 60; toe/heel gait with some difficulty; lumbar spine flexion 20, extension 15 left and right, extension and lateral flexion 15 left and right; straight leg raising test 90 degrees sitting, 70 degrees on the right in the supine position and 15 degrees on the left in the supine position with complaints of back pain. (Tr. 224-225). Dr. Fontana noted that Plaintiff complained of "pain with rotation of the hips as though she is having radicular pain, which is inconsistent with a lumbar

9

radiculopathy." (Id. at 225). Her hip x-rays were normal, and she had no atrophy in her lower extremities. (Id.) He further noted that the AP of lumbar spine showed minimal left-sided scoliosis with minimal degenerative changes and that the x-rays of the lateral lumbar spine showed no disc space narrowing but some spurring at the L1-2 and L2-3 levels in the lower back. (Id.) Dr. Fontana concluded that Plaintiff is "limited to light to moderate types of activities." (Id.)

On this same date, Dr. Fontana also completed a PCE, and determined that Plaintiff can sit/stand/walk for 2 hours at a time and 8 hours in an 8 hour workday; lift up to 25 pounds continuously, up to 50 pounds frequently and up to 100 pounds occasionally; carry up to 20 pounds continuously, up to 25 pounds frequently and up to 50 pounds occasionally; use her upper/lower extremities for simple grasping, pushing/pulling of arm controls and fine manipulation; continuously reach and frequently bend/squat/crawl/climb; and only has a moderate restriction from activities around unprotected heights and a mild restriction from being around moving machinery or driving automotive equipment. (Id. at 226). Dr. Fontana concluded that Plaintiff is limited to light to medium type of activities. (Tr. 226).

On July 9, 2004, Robert Huff, M.D. ("Dr. Huff") found that while Plaintiff's range of motion is limited, she shows no signs of muscular weakness; he recommended an MRI and opined that she should undergo a discectomy, but did not complete a PCE. (Id. at 222, 232).

1.      **Whether the ALJ erred by assigning controlling weight to the opinion of a consulting State Agency physician?**

Plaintiff contends that the ALJ erred when he assigned controlling weight to the opinion of consulting State Agency orthopedist Dr. Andre Fontana, M.D. ("Dr. Fontana"), in violation of 20

C.F.R. § 416.919,[6] because he failed to reference her November 2002 MRI findings (a small posterolateral left-sided disc protrusion at L5-S1) in reaching his opinion of the severity of her impairment. Plaintiff argues that Dr. Fontana's report - which found that she could perform light to medium work and that she has minimal degenerative disc disease - is inconsistent with her MRI such that it does not provide "an adequate basis" for the ALJ to have made his decision.

Specifically, in his decision, ALJ Maggard stated as follows with regard to Plaintiff's MRI and Dr. Fontana:

> . . . . **Dr. Hamilton eventually referred her for a magnetic resonance image ("M.R.I.") of her lumbar spine, which was taken on November 12, 2002. The claimant's lumbar M.R.I. was interpreted as showing a small posterolateral left-sided disc protrusion at L5-S1. The claimant's M.R.I. showed only slight neural encroachment and did not show any spinal stenosis or other acute process**. . . .
> * * *
> **Dr. Andre J. Fontana, a board-certified orthopedist, performed a consultative examination of the claimant on June 28, 2004.** On said date, the claimant's deep tendon reflexes were within normal limits, her sensory functioning was intact and her motor strength was uncompromised. The claimant's grip strength was normal and she complained of "some" back pain on straight leg raising. The claimant's range of motion in her cervical spine and lumbar spine was limited, but she showed no evidence of muscular atrophy in her lower extremities. X-rays of the claimant's hips were normal, and x-rays of her lumbar spine were interpreted as showing left-sided scoliosis with minimal degenerative changes, spurring a L1-2 and L2-3 and no evidence of disc space narrowing. Dr. Fontana commented that the claimant complained of pain with hip rotation, which he emphasized was "inconsistent with a lumbar radiculopathy." Dr. Fontana diagnosed the claimant with lumbar degenerative disc disease, and determined that the claimant could perform "light to moderate types of activities." Specifically, Dr. Fontana concluded that the claimant could sit, stand or walk two hours each at one time and eight hours each during the course of a workday. Dr. Fontana opined that the claimant could occasionally lift 51-100 pounds, frequently lift 26-50 pounds and continuously lift 21-25 pounds, occasionally carry 26-50 pounds, frequently carry 21-25 pounds and continuously carry 11-20 pounds . . . . that the claimant could use her upper and lower extremities

---

[6] Section 416.919 provides that when a consultative examination and medical opinion is required to determine a claimant's impairments and functional limitations, the report must be examined to determine whether it provides evidence which serves as an adequate basis for decision making, is internally consistent and is consistent with other available information with regard to a plaintiff's condition. See also 20 C.F.R. § 416.919a.

11

in pushing and pulling motions, and could engage in fine manipulation and simple grasping . . . . that the claimant could continuously reach, and could frequently bend, squat and crawl . . . . that the claimant had a moderate limitation in her ability to work in unprotected heights, but found only a mild restriction in her capacity to work near moving machinery and drive automotive equipment []. . . .

\* \* \*

. . . . Given the evidence as a whole, the Administrative Law Judge finds that the claimant does have "severe" impairments . . . lumbar degenerative disc disease and lumbar pain . . . .

\* \* \*

After carefully considering the entire record in this matter, including the testimony of the claimant . . . and Social Security Rulings 96-7p and 96-8p, **the undersigned finds that the assessment provided by Dr. Fontana is the most credible opinion of record because it is consistent with the record as a whole, the claimant's physical exams and the radiographic evidence of record**. **Dr. Fontana is a board-certified orthopedist, who has extensive training and experience in the treatment of musculoskeletal impairments and their impact on a person's physical ability.** Accordingly the Administrative Law Judge finds that the claimant possesses the residual functional capacity to perform a medium range of work activity . . . . the claimant can: sit, stand or walk two hours each at one time and eight hours each during the course of a workday; occasionally lift 51-100 pounds; frequently lift 26-50 pounds; continuously lift 21-25 pounds; occasionally carry 26-50 pounds; frequently carry 21-25 pounds; continuously carry 11-20 pounds; use her upper and lower extremities in pushing and pulling motions; engage in fine manipulation and simple grasping; continuously reach, and frequently bend, squat, crawl and climb. The claimant has a moderate limitation in her ability to work in unprotected heights, and has a mild restriction in her capacity to work near moving machinery and drive automotive equipment.  This residual functional capacity assessment is based on the medical opinions of the claimant's treating and examining physicians as well as the record as a  whole.

\* \* \*

The claimant, through Mr. Kemmerly, has objected to the Administrative Law Judge assigning "any weight" to Dr. Fontana's opinion . . . . However, Mr. Kemmerly's arguments are without merit. Mr. Kemmerly argues that Dr. Fontana's opinion "is not consistent with the available information." However, such argument is not consistent with Dr. Revels' opinion, which was made after this physician reviewed the claimant's lumbar M.R.I. himself and concluded that it showed only "mild" degenerative disc disease. Dr. Fontana also x-rayed the claimant's hips and lumbar spine and used those findings in his assessment of the claimant. Mr. Kemmerly, in effect, questions whether Dr. Fontana was provided medical evidence by the State Agency in rendering his opinion. However, the Administrative Law Judge emphasizes that both Drs. Fontana and Revels work for the same medical group, Alabama Orthopedic Clinic, and that Dr. Fontana would have been made privy to the claimant's lumbar M.R.I. and Dr. Revels' treatment notes (including the claimant's

> F.C.E.) because such documentation was readily available to him through the medical records department at the clinic. Dr. Fontana is not required to provide an item-by-item inventory of the medical records he used in writing his report and opinion, and his annotation that he considered evidence supplied by the State Agency is verification that he examined the claimant's previous treatment. Also, **Dr. Fontana's findings regarding the claimant's physical capacity are actually more restrictive than those placed on her by Dr. Revels, a treating orthopedist, who found that the claimant could engage in full work duties, and had a 0% musculoskeletal disability rating**.
> \* \* \*

(Tr. 16, 18, 20, 23 (emphasis added)).

A treating physician's opinion is generally entitled to more weight than a consulting physician, see, e.g., Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984), and must be given substantial weight absent a showing of "good cause" to the contrary, supported by substantial evidence of record. See, e.g., Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-1160 (11th Cir. 2004) (per curiam); Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Sharfarz v. Bowen, 825 F.2d 279, 280 (11th Cir. 1987). See also 20 C.F.R. § 404.1527(d)(2).[7] "[G]ood cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.2d at 1240-1241 (citing Lewis, 125 F.3d at 1440); Edwards, 937 F.2d 580 (holding that the ALJ properly discounted a treating physician's report where the physician was unsure of the accuracy of his findings and statements, and good cause existed because the opinion was contradicted by other notations in the physician's own record).

---

[7] If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

A treating physician's report "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." Edwards, 937 F.2d at 583-584. The ALJ may afford such conclusory findings such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987). As such, the ALJ has the discretion to weigh objective medical evidence and may choose to reject the opinion of a treating physician and accept the opinion of a consulting physician - but he must show "good cause" for his decision. Id. See also e.g., Gholston v. Barnhart, 347 F. Supp. 2d 1108, 1114 (M.D. Ala. 2003). When the consultative physician is a specialist, his opinion may be entitled to even more weight. See, e.g., Haag v. Barnhart, 333 F. Supp. 2d 1210, 1220 and notes 7-8 (N.D. Ala. 2004).

Here, the ALJ did not reject the opinions of all of Plaintiff's treating physicians. Rather, the ALJ did not assign Dr. Belen's opinion controlling weight, and instead, assigned controlling weight to the opinions of consulting orthopedist Dr. Fontana and Plaintiff's treating orthopedist Dr. Revels. In so doing, the undersigned finds that the ALJ, in evaluating the other physicians' findings, considered the appropriate factors, gave good reasons for the weight he assigned to them, and adequately explained his reasoning. See supra.

As noted herein, Plaintiff underwent an MRI on November 12, 2002, per Dr. Hamilton, the results of which revealed that she has a small posteolateral left-sided disc protrusion. (Tr. 160-161). On June 28, 2004, consultative orthopedist Dr. Fontana performed a examination on Plaintiff and concluded that she had minimal degenerative disc disease without expressly referencing Plaintiff's November 2002 MRI. (Id. at 223-227). Contrary to Plaintiff's claim, however, this omission neither undermines the overall value of Dr. Fontana's opinion, nor does it prove that Dr. Fontana

14

never received, reviewed or analyzed Plaintiff's MRI.

Specifically, Dr. Fontana's findings - that Plaintiff has mild degenerative disease and is limited simply to "light to medium" work - are consistent with the substantial evidence of record:

- While Plaintiff complained to Dr. Hamilton of back pain from October 2002-December 2002, she was released after each exam and allowed to return to "light work." The November 12, 2002 MRI, arranged by Dr. Hamilton, found only a small disc protrusion. Dr. Hamilton's next treatment of Plaintiff, on November 26th, revealed his conclusion that she could still work. Indeed, Dr. Hamilton's treatment notes show that he only made a few minimum abnormal findings (mild paraspinal disease and once, decreased lumbar-spinal range of motion and decreased reflexes), but found no muscular weakness, negative straight leg raising tests, normal sensations, ability to toe/heel walk, deep tendon reflexes 2+, and normal reflexes and normal gait. His notes also reveal that she reported to him, on several occasions, that she was doing "better" and that her pain was "easing up" with physical therapy, which she found helpful. And even though he placed her on light duty/light duty with "sit down work," for a few days at a time from October-December 2002, for lumbar sprain/strain, he never found her to be permanently disabled/unable to work.

- Orthopedist Dr. Revels, Plaintiff's treating physician, who treated her from December 2002 through February 2003, never found any significant abnormalities or problems. Rather, he found that she had no acute distress, could stand in erect posture, had significant Waddell characteristics, negative straight leg raising tests, no neurological deficits, no appreciable severe spasms, no angular deformity, no ataxia, and that the severity of her complaints were "above and beyond expected findings." Dr. Revels concluded that Plaintiff had no restrictions in her abilities to perform full duty work and that she had 0% partial permanent disability rating. And, while Dr. Revels recognized that she had lumbar sprain/strain and low back pain, he concluded that she had no limitations for full work duty and did not need to be treated with surgery. Dr. Revels' February 2003 FCE also revealed that she displayed signs of symptoms magnification, less than full effort, and self limiting behavior (that she did not put forth her full maximum effort), had multiple inconsistencies in her exams, a scored of 5/5 on Waddell testing, and had no restrictions on her ability to perform full duties. In so concluding, Dr. Revels reviewed her MRI and found that it showed only mild degenerative disc disease. Dr. Revels also opined that her back would improve on its own without surgery or further treatment.

- From February 2003 to November 2003, Plaintiff received no treatment for

15

        her allegedly permanently disabling back pain.

- An "other source," Dr. Dimmick (industrial rehabilitation counselor) found that while Plaintiff demonstrated an ability to lift in the full light and partial medium physical demand level, her actual abilities were uncertain because of a less than maximum effort, symptom magnification, self-limiting behavior and inconsistencies which made her actual capabilities uncertain and recommendations difficult to make (i.e., that her abilities would likely be greater/more than the full light and partial medium physical demand level).

- Even though another of Plaintiff's treating physicians, Dr. Belen, a family practitioner, noted that she walked with a cane, he found her physical exam to be unremarkable except for tingling and left foot numbness. His recent February 2004 exam was within normal limits except for paraspinal muscle spasms, even though she was walking with a cane. And, while Dr. Belen's PCE provided for more restrictive work than Drs. Fontana or Revels, Dr. Belen is not an orthopedist (i.e., specialist) and his findings were based on a question/answer session with Plaintiff rather than a physical exam. Additionally, even Dr. Belen ultimately concluded, at his most recent exam of Plaintiff on May 20, 2004, that her musculoskeletal system and extremities were within normal limits. Significantly as well, Dr. Belen treated Plaintiff on just a few occasions from January-May 2004.

- Plaintiff's most recent exam of record, namely Dr. Fontana's June 28, 2004 orthopedic evaluation, revealed as follows: her deep tendon reflexes were 2+; sensory functioning was intact; motor/grip strength was normal at 5/5; cervical spine flexion 60, extension 20; range of motion of cervical spine rotation 45 left and right, 20 of flexion left and right; left shoulder forward flexion 160, abduction 110, external rotation to 30, internal rotation to 100 and extension to 60; toe heel gait with some difficulty; lumbar spine flexion 20, extension 15 left and right, extension and lateral flexion 15 left and right; straight leg raising test was 90 degrees sitting, 70 degrees on the right in the supine position and 15 degrees on the left in the supine position with complaints of back pain; she complained of pain with hip rotation as though having radicular pain which is inconsistent with a lumbar radiculopathy; she had no atrophy in her lower extremities; hip x-rays were normal; AP of lumbar spine minimal left sided scoliosis with minimal degenerative changes; and x-rays of her lumbar spine showed no disc space narrowing but some spurring at the L1-2 and L2-3 levels in the lower back. Dr. Fontana concluded that Plaintiff is "limited to light to moderate types of activities." Dr. Fontana's PCE also revealed that she can sit/stand/walk for 2 hours at a time and 8 hours in an 8 hour workday; lift up to 25 pounds continuously, up to 50 pounds frequently and up to 100 pounds occasionally; and carry up to

16

>    20 pounds continuously, up to 25 pounds frequently and up to 50 pounds occasionally. He also determined that Plaintiff can use her upper/lower extremities for simple grasping, pushing/pulling of arm controls and fine manipulation; can continuously reach; and can frequently bend/squat/crawl/climb. Dr. Fontana added that she is limited to light to medium type of activities, has a moderate restriction from activities around unprotected heights and a mild restriction from being around moving machinery or driving automotive equipment. As such, while Dr. Fontana's exam resulted in some minimal negative findings, the majority of his findings supports his opinion that Plaintiff could perform light-medium work.

- Plaintiff was never referred to a pain management clinic for treatment.

- Plaintiff testified that none of her treating physicians recommended surgery for her pain.

- A March 25, 2003 credibility assessment revealed that Plaintiff was "not credible," as no restrictions had been placed on her ability to perform work. Her credibility was also found to be undermined by physicians of record due to her self-limiting behavior, Waddell characteristics, less than full effort and symptom magnification.

See supra.

In light of the foregoing, there is simply no evidence that Dr. Fontana was not provided with all of Plaintiff's relevant records, including the MRI at issue. The mere fact that orthopedist Dr. Fontana failed to reference Plaintiff's MRI in his report does not mean that he did not consider it, possess it or review it. This is particularly true because Dr. Fontana's report was consistent with Dr. Revels' opinion, as Plaintiff's treating orthopedist - who specifically referenced the MRI - that she had only mild degenerative disc disease that would improve without surgery and no significant abnormalities; and further, Dr. Fontana's findings are even more persuasive because his report was even more restrictive than that of Dr. Revels (light-medium work versus an ability to perform full duty work, respectively). See supra. Second, Dr. Fontana, a specialist, conducted a physical examination of Plaintiff and supported his orthopedic diagnosis with detailed findings. Id. Third,

the record contains reports from other physicians - such as Plaintiff's treating orthopedist Dr. Revels - who specifically considered the MRI results and did not conclude that she was permanently disabled. Id. Fourth, the ALJ's detailed decision articulates sufficient reasons for assigning substantial weight to Dr. Fontana. Id. Thus, the ALJ did not err, as his decision is supported by substantial evidence of record. See, e.g., Lilly v. Barnhart, 2004 WL 875545, *5 (E.D. Pa. Mar. 22, 2004).

## V.     Conclusion

For the reasons set forth, and upon consideration of the administrative record and memoranda of the parties, it is the recommendation of the undersigned that the decision of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income benefits, is due to be **AFFIRMED.**

The attached sheet contains important information regarding objections to this report and recommendation.

DONE this the **17th** day of **July, 2006.**

                                           /s/ Sonja F. Bivins
                                      **UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection.** Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                              **/s/ SONJA F. BIVINS**
                                              **UNITED STATES MAGISTRATE JUDGE**